# CITATION

SABINE PARISH WATER DISTRICT NO. 1

Versus

MASTER METER, INC.

Case: 61,525
Division:
11th Judicial District Court
Parish of Sabine
State of Louisiana



TO: MASTER METER, INC.
101 REGENCY PARKWAY
MANSFIELD, TEXAS 76063

Parish of SABINE

**YOU ARE HEREBY CITED** to comply with the demand contained in the above entitled and numbered matter, a certified copy of which accompanies this citation, or to file your answer or other pleading to said petition in the office of the Clerk of the 11TH Judicial District in the Sabine Parish Courthouse in the City of Many within Thirty (30) days after the filing in the record of the affidavit of the individual who either:

a) mailed the process to you, showing that it was enclosed in an envelope properly addressed to you, with sufficient postage affixed, and the date it was deposited in the United States mail, to which shall be attached the return receipt of yourself; or

b) actually delivered the process to you, showing the date, place and manner of delivery.

Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

**WITNESS THE HONORABLE JUDGES** of our said Court on this the 30TH day of DECEMBER, 2008.

Atty:

Tammy Foster
Clerk of Court

_____
By: Deputy Clerk of Court

Exhibit A

SABINE PARISH WATER DISTRICT NO. 1     DOCKET NUMBER: 61525

RECEIVED AND FILED

VERSUS     2008 DEC 30 P 1:49     11TH JUDICIAL DISTRICT COURT

MASTER METER, INC.     TAMMY FOSTER CLERK OF COURT SABINE PARISH     SABINE PARISH, LOUISIANA

**PETITION**

NOW INTO COURT, through undersigned counsel, comes SABINE PARISH WATER DISTRICT NO. 1 ("The District"), a political subdivision domiciled in Sabine Parish, Louisiana, who respectfully represents as follows:

1.

Made defendant herein is:

MASTER METER, INC. ("Master Meter"), a Texas corporation domiciled at 101 Regency Parkway, Mansfield, Texas 76063, who may be served there through any officer of the company via Long-Arm Service.

2.

The District began operating in 1980, first using mechanical digital water meters. At that time, the District had approximately 527 customers. The number of customers grew to around 1135 by about September 2002. From 1980 through 2002, meter reading was performed manually, by two District employees. By year 2002, it took those two employees approximately six days to read all of the meters.

3.

To perform its function, the District has historically purchased water from the City of Many on a monthly basis, and thereafter resold that water to its own customers. Beginning in about March 2005, the District also began producing some of its own water through a District water well. The amount of water purchased from the City and produced by the District well is measured each month; likewise, each customer is separately billed for water usage. The difference between the amount purchased and produced by the District, and the amount sold to its customers, is referred to as "water loss," which loss is due to normal leakages in equipment, flush-outs, and meter inaccuracies.

4.

Meter efficiency deteriorates over time; older meters run slower and read less accurately. For that reason, the District's meters had begun to read more slowly by year 2000, causing water losses to the District.

CORKERN & CREWS, L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

5.

In year 2002, the District began to consider the purchase of new technologies that might reduce the costs of meter reading, improve billing accuracy and efficiency, and reduce water losses. Equipment manufactured and distributed by Master Meter was considered for that purpose.

6.

On June 18, 2002, Master Meter's representative attended the District's monthly meeting, and presented the benefits of a proposed Master Meter system. At that time, the proposed Master Meter system would include the use (for each customer site) of: (a) a water meter manufactured by Master Meter; coupled with (b) a transmitter manufactured by Ramar, LLC. The two components were supposed to work together to meter the usage and wirelessly transmit the data to a laptop computer (to be provided by Master Meter), which would record the data as the "meter reader" drove along the customer route. The associated software would thereafter compile the data for accounting and billing purposes. Master Meter suggested that this system would: (a) improve reading efficiency times, as only one reader would be necessary (that reader would supposedly be able to "drive" the route in less than two days); (b) decrease water losses, because the meters would be new, and "misreads" would be prevented by the technology; and (c) improve billing accuracy and efficiency, because the data would flow directly from the meter to the meter-reading computer to the billing-computer to prepare the monthly customer bills, thereby minimizing human input error, and automatically providing the necessary measurement and accounting entries. The District had informed Master Meter that all of these factors were important in determining whether the District should proceed with the purchase. Master Meter offered to sell the system to the District on specified terms; the offer was open for 30 days. Within that time period, the District accepted Master Meter's offer, and initiated its order of the system through Coburn Supply of Alexandria, Louisiana, an authorized dealer of Master Meter.

7.

The meter system, consisting of approximately 1200 meter units, was shipped and installed beginning in December 2002. By February 2003, all prior units had been replaced with the new system. Drive-by tests began in March 2003, and continued through May 2003. Failure rates were calculated as follows: (a) March 2003, 21.4% failing to read (257 of 1200 meters); (b) April 2003, 36.3% failing to read (439 of 1203 meters); and (c) May 2003, 44.9% failing to read (545 of 1215 meters).

CORKERN & CREWS,
L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

8.

When a meter fails to read, the meter reader must dismount from the vehicle and read the meter manually. Accordingly, by May 2003, the meter reader was required to read almost half of the new meters by hand.

9.

In addition to failing to read, some meter units were transmitting inaccurate readings. The inaccurate readings—which were often not caught prior to billing—also caused significant confusion amongst the District's customers, and the District was required to spend significant resources responding to customer complaints. In addition, water losses had increased from approximately 27.5% in the period 2001-2002 to about 39.6% from October 2002 through March 2003.

10.

The District reported these concerns to Master Meter. Master Meter attributed the problems to the transmitter component, which had been manufactured by Ramar, LLC.

11.

In May 2003, the District formally objected to the continued use of the entire system, and demanded that Master Meter provide a full replacement, at Master Meter's cost. The District requested that Master Meter replace the two-component system (which included the transmitter manufactured by Ramar, LLC) with a system that would work as promised. The District suggested that Master Meter make the necessary replacements using only Master Meter's new Dialog 3G units. These new units, wholly manufactured by Master Meter, combined the meter and transmitter components within one enclosed case. This design improvement was supposed to prevent the problems that had allegedly caused the misreads and failures in the original system.

12.

In July 2003, Master Meter offered the District two options for the replacement: (a) replace all existing units with a new self-contained unit manufactured by Ramar, LLC; or (b) replace all existing transmitters (but not meters) with a Master Meter transmitter, specifically the Dialog 3G-WR (wireless retrofit). Master Meter offered to provide assistance in making this transition, along with necessary software and training. The District accepted the second proposed option, and Master Meter made arrangements to provide the necessary components (the WR units and software) to make the existing system work properly, all in accordance with the agreement between the parties.

CORKERN & CREWS,
L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

13.

The replacement WR units were shipped in late 2003, and installed in January-February 2004. The system was modified by changing approximately 1200 transmitters from the Ramar, LLC component to the Master Meter WR component. According to Master Meter, once fully installed and functional, this system would then correct all of the prior problems—water loss, reading inaccuracies, billing inaccuracies, reading time efficiency—and last for at least ten years.

14.

The retrofitted Master Meter system worked properly for approximately 12-15 months, after which the same problems started to appear—failure to read, reading inaccuracies, water loss, etc. At first, these problems appeared on a limited basis. The District tried to work in good faith with Master Meter and attempted to manage these issues by replacing failed units through Master Meter's warranty system on a case-by-case basis.

15.

By 2008, the system has grown to include about 1588 meters (including those installed and available for installation). The portion of the system retrofitted in January 2004 has continued to fail, and the rate of failure has significantly increased in year 2008. More specifically, of the 1200 or so meters installed and retrofitted in January 2004, about 32% have failed to the point that they have required a complete replacement (387 meters out of 1200 retrofitted). At present, an additional 260 meters are not functioning, and will likewise require a complete replacement. The failed meters represent approximately 54% of the January 2004 retrofitted system (or alternatively, about 43% of the total current system, some of which is newer, as it consists of those units replaced since January 2004). Water losses continue to increase, "manual" readings are now once again required as an ordinary part of the reading function, customer billing problems are frequent and not preventable, and costs to read and bill have significantly increased. The operation of the system now creates more problems than it was intended to solve.

16.

Water losses have increased to an average water cost of $31,670 per year since the January 2004 replacements. Losses are progressively getting worse on a monthly basis. Current deficiencies in the system require two meter readers to work for four days to read the necessary meters, rather than one for two days. The extra time is required to manually read those meters that do not transmit.

CORKERN & CREWS, L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

Many meters are reading inaccurately, which problem is not often caught until a customer notices a problem and complains. Such complaints are requiring significant additional resources to address, including travel time and costs to manually read those meters. The District's customers have lost confidence in the accuracy of the system. To prevent such inaccuracies, the District would have to perform a manual read of all 1500 meters, a task that would now require two readers over a ten day period.

17.

The system that was promised by Master Meter and accepted by the District has never been delivered. It is now clear that the efforts to correct the initial installation have not been successful. The system now appears doomed to fail entirely within a short period, perhaps by the end of 2009.

18.

Master Meter knew that the District's cause or reason for the purchase of the system was to efficiently lessen water losses, improve reading accuracy, improve billing accuracy, and improve reading time efficiency and cost. The District would not have incurred any obligations to Master Meter except with reference to this cause. The District's consent to the original agreement with Master Meter is vitiated by error as to the cause of that agreement.

19.

Master Meter's actions and failures to correct the system were and are not in accordance with the agreement of the parties and applicable law, and constitute without limitation a breach of contract, a breach of express and implied warranties, and the sale of a redhibitory system.

20.

As part of the overall agreement, Master Meter sold a system to the District that is now deemed redhibitory. The entire system is redhibitory because the defects described above have rendered it useless or so inconvenient that the District would not have purchased it if it had known of the defect. The Master Meter system is not fit for its ordinary use as an automated metering system. The District discovered this overall defect in the system upon review of the number of previous warranty replacements and increasing failure rates exhibited in year 2008.

21.

Damages to the District for this breach of contract have included the following: (a) increased meter reading times; (b) increased office time required for billing, and customer complaint

CORKERN & CREWS,
L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

management; (c) water losses; (d) uncertainty in measurements of water flows and accounting entries; and (e) other damages to be proved at trial.

22.

In addition to the breach of contract, some or all of the actual Master Meter units remain under 10-year warranty by Master Meter, which warranty remains effective through approximately February 2014.

WHEREFORE, plaintiff, SABINE WATER DISTRICT NO. 1, hereby prays that, following due proceedings, there be judgment herein in its favor, and against MASTER METER INC.,

I. For a return of the contract price and purchase price of all sums paid to Master Meter for the water meter system and related components described in the petition; and,

II. For all damages proved at trial, plus costs, judicial interest, and attorney's fees; and/or that,

III. This Court declare the terms of the existing agreement and/or warranty to include a full replacement of the existing system with the upgraded 3G unit system; and,

IV. For all other relief allowed by the law, facts, and equity.

Respectfully submitted:

CORKERN & CREWS, L.L.C.
Attorneys at Law
Post Office Box 1036
616 Front Street
Natchitoches, Louisiana 71458-1036
Phone: (318) 352-2302
Facsimile: (318) 352-7548

BY: _____
J. CHRIS GUILLET
Bar Roll Number: 26312
Attorney for Sabine Parish Water District No. 1

Service Instructions:
Plaintiff shall serve defendant through Long Arm Service

A TRUE COPY-ATTEST
_____
DY. CLERK ELEVENTH JUDICIAL
DISTRICT COURT, SABINE PARISH, LA.

CORKERN & CREWS,
L.L.C.
616 FRONT STREET
P.O. BOX 1036
NATCHITOCHES, LA
71458-1036
(318) 352-9809

CIVIL SUIT NUMBER 61,525

| | |
|---|---|
| SABINE PARISH WATER DISTRICT NO. 1 | 11TH JUDICIAL DISTRICT COURT |
| VERSUS | PARISH OF SABINE |
| MASTER METER, INC. | STATE OF LOUISIANA |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## WRITTEN NOTICE OF REMOVAL

PLEASE TAKE NOTICE that defendant, Master Meter, Inc., in the case entitled "*Sabine Parish Water District No. 1 vs. Master Meter, Inc.*" Civil Action No. 61525 on the docket of the Eleventh Judicial District Court, Sabine Parish Louisiana has on the 28TH day of January, 2009, filed in the District Court of the United States, Western District of Louisiana, Shreveport Division, a petition for the removal of said action, a copy of said petition being served herewith in conformity with Title 28, U.S. Code, Section 1446(d) reading as follows:

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

Pursuant to 28 U.S.C. §1446(d), this state court action shall proceed no further unless and until remanded.

WE CERTIFY that the foregoing written notice of the filing of the petition, has been mailed to J. Chris Guillet, Corken & Crews, L.L.C., P.O. Box 1036, Natchitoches, Louisiana 71458 and to Dollie M. Knippers of the Eleventh Judicial District Court, Sabine Parish Courthouse, Post Office Box 419, Many, Louisiana 71449.

Alexandria, Louisiana, this 28th day of January, 2009.

Respectfully submitted,

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By _____
Lottie L. Bash, T.A. #26186
2001 MacArthur Drive
P.O. Box 6118
Alexandria, LA 71307-6118
(318) 445-6471
(318) 445-6476

**ATTORNEYS FOR DEFENDANT, MASTER METER, INC.**

Exhibit B